2014-1812

_____

# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

_____

REMBRANDT SOCIAL MEDIA, LP,

*Plaintiff-Appellant*,

V.

FACEBOOK, INC.,

*Defendant-Appellee*.

_____

Appeal From The United States District Court
For The Eastern District Of Virginia
In Case No. 1:13-CV-00158-TSE-TRJ, Judge T.S. Ellis, III

_____

## FACEBOOK'S OPPOSITION TO REMBRANDT'S MOTION TO ENFORCE ESTOPPEL FROM IPR FINAL WRITTEN DECISION

_____

Heidi L. Keefe
Mark R. Weinstein
COOLEY LLP
3175 Hanover Street
Palo Alto, CA  94304
(650) 843-5000

Michael G. Rhodes
COOLEY LLP
101 California Street, 5th Floor
San Francisco, CA  94111
(415) 693-2000

Thomas G. Hungar
   *Principal Attorney*
Lucas C. Townsend
Blair A. Silver
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 955-8500

*Counsel for Facebook, Inc.*

## CERTIFICATE OF INTEREST

Counsel for Defendant-Appellee Facebook, Inc. certifies the following:

1.    The full name of every party or amicus represented by me is:

        Facebook, Inc.

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

        The party named in the caption, Facebook, Inc., is the real party in interest.

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

        There are no such corporations or companies.

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

| **Gibson, Dunn & Crutcher LLP** | **Cooley LLP** |
| --- | --- |
| Thomas G. Hungar | Stephen C. Neal |
| Lucas C. Townsend | Michael G. Rhodes |
| Blair A. Silver | Heidi L. Keefe |
| | Mark R. Weinstein |
| | Stephen R. Smith |
| | Jonathan G. Graves |
| | Phillip E. Morton |
| | John S. Kyle |
| | Elizabeth L. Stameshkin |
| | Paul Batcher |

_____        _____
August 6, 2015                        /s/ *Thomas G. Hungar*
      Date                                   Thomas G. Hungar

# TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................1

ARGUMENT ...................................................................................................3

I.     Rembrandt's Argument Conflicts With The Text, Structure, And
Purpose Of § 315(e)(2) ........................................................................3

      A.     Section 315(e) Does Not Prevent Facebook From Refuting
Rembrandt's Attacks On The Judgment Below...................................3

      B.     Section 315(e)(2) Precludes A "Petitioner," Not The Courts ..............5

      C.     Section 315(e)(2) Does Not Apply On Appeal ...................................6

      D.     The Purpose Of § 315(e)(2) Was To Streamline Litigation By
Barring Pending Or Subsequent District Court Litigation—Yet
Rembrandt's Interpretation Only Increases Future Litigation ...........10

II.    Collateral Estoppel Does Not Apply Between A Board Decision
Of "Not Unpatentable" And A Jury Verdict Of "Invalidity"
Because The Issues Are Not Identical ..........................................................12

III.   Rembrandt's Construction Of § 315(e)(2) Would Violate The
Separation Of Powers ...................................................................................16

CONCLUSION ................................................................................................20

# TABLE OF AUTHORITIES

Page(s)

## <u>Cases</u>

*A&D Auto Sales, Inc. v. United States*,
    748 F.3d 1142 (Fed. Cir. 2014) ........................................................................13

*Allgeier v. United States*,
    909 F.2d 869 (6th Cir. 1990) .............................................................................5

*Am. Tobacco Co. v. Patterson*,
    456 U.S. 63 (1982)............................................................................................12

*B&B Hardware, Inc. v. Hargis Indus., Inc.*,
    135 S. Ct. 1293 (2015).....................................................................................19

*Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*,
    402 U.S. 313 (1971).................................................................................. 11, 12

*Brown Bag Software v. Symantec Corp.*,
    960 F.2d 1465 (9th Cir. 1992) ..........................................................................5

*Chi. & S. Air Lines v. Waterman S.S. Corp.*,
    333 U.S. 103 (1948).........................................................................................17

*Clark v. Martinez*,
    543 U.S. 371 (2005).................................................................................. 17, 20

*ComRent Int'l, LLC v. Palatini*,
    No. 13-5732, 2013 WL 5761319 (E.D. Pa. Oct. 24, 2013)...............................11

*Dana Corp. v. NOK, Inc.*,
    882 F.2d 505 (Fed. Cir. 1989) ........................................................................15

*Ethicon, Inc. v. Quigg*,
    849 F.2d 1422 (Fed. Cir. 1988) ......................................................... 13, 14, 15

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Fresenius USA, Inc. v. Baxter International, Inc.*,
  721 F.3d 1330 (Fed. Cir. 2013) ............................................................ 15, 16, 19

*Guandong Wireking Housewares & Hardwares Co. v. United States*,
  745 F.3d 1194 (Fed. Cir. 2014) .................................................................. 17, 18

*Hayburn's Case*,
  2 U.S. (2 Dall.) 408 (1792) ...........................................................................17

*Johnson v. Whitehead*,
  647 F.3d 120 (4th Cir. 2011) ..........................................................................14

*In re Oelrich*,
  666 F.2d 578 (C.C.P.A. 1981) .........................................................................14

*Panduit Corp. v. Dennison Mfg. Co.*,
  810 F.2d 1561 (Fed. Cir. 1987) .......................................................................15

*Plaut v. Spendthrift Farm, Inc.*,
  514 U.S. 211 (1995) .................................................................................. 17, 18

*Polaroid Corp. v. Eastman Kodak Co.*,
  789 F.2d 1556 (Fed. Cir. 1986) .........................................................................4

*RF Del., Inc. v. Pac. Keystone Techs., Inc.*,
  326 F.3d 1255 (Fed. Cir. 2003) .......................................................................13

*Sedlack v. Braswell Servs. Grp., Inc.*,
  134 F.3d 219 (4th Cir. 1998) ..........................................................................13

*TASER Int'l, Inc. v. Karbon Arms, LLC*,
  6 F. Supp. 3d 510 (D. Del. 2013) ....................................................................14

*Tex. Instruments, Inc. v. Cypress Semiconductor Corp.*,
  90 F.3d 1558 (Fed. Cir. 1996) ...........................................................................9

*Timex V.I., Inc. v. United States*,
  157 F.3d 879 (Fed. Cir. 1998) ...........................................................................3

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Town of Deerfield, N.Y. v. FCC*,
   992 F.2d 420 (2d Cir. 1993) ...............................................................17

*United States v. Klein*,
   80 U.S. (13 Wall.) 128 (1871) ..........................................................17

## **Statutes**

19 U.S.C. § 1337(c) .............................................................................8

28 U.S.C. § 596(a)(3) ..........................................................................7

28 U.S.C. § 1295(c)(1) ........................................................................7

28 U.S.C. § 1295(c)(2) ........................................................................7

28 U.S.C. § 1331 .................................................................................7

28 U.S.C. § 1332(a) .............................................................................7

28 U.S.C. § 1335(a) .............................................................................7

28 U.S.C. § 1338 .................................................................................6

28 U.S.C. § 1367(a)-(b) .......................................................................7

28 U.S.C. § 1391(a)-(b) .......................................................................7

28 U.S.C. § 1400(b) .............................................................................7

28 U.S.C. § 1441(a) .............................................................................7

28 U.S.C. § 1631 .................................................................................7

28 U.S.C. § 1915(g) .............................................................................7

28 U.S.C. § 2412(d)(2)(E) ...................................................................7

# TABLE OF AUTHORITIES
## (continued)

Page(s)

35 U.S.C. § 134(a) ....................................................................................7

35 U.S.C. § 141(a) ....................................................................................7

35 U.S.C. § 145 ........................................................................................7

35 U.S.C. § 146 ........................................................................................8

35 U.S.C. § 315(e)(2) ...................................................................... 3, 6, 7, 8

## Rules

Fed. R. App. P. 1 ......................................................................................8

Fed. R. App. P. 3(a) ..................................................................................8

Fed. R. App. P. 15(a)(1) ...........................................................................8

Fed. R. App. P. 16 ....................................................................................8

Fed. R. App. P. 31(c) ................................................................................5

Fed. R. Civ. P. 1 .......................................................................................8

Fed. R. Civ. P. 2 .......................................................................................8

## Other Authorities

157 Cong. Rec. S952 (daily ed. Feb. 28, 2011) .......................................9

157 Cong. Rec. S1375-76 (daily ed. Mar. 8, 2011) ...............................10

H.R. Rep. No. 112-98, pt. 1, at 48 (2011),
    as reprinted in 2011 U.S.C.C.A.N. 67, 78 ........................................10

U.S. Const. art. III, § 1 ...........................................................................18

## INTRODUCTION

A jury found by clear and convincing evidence that the asserted claims of Rembrandt's '316 patent are invalid as obvious over the prior art presented at trial—*different* prior art than the art later presented in the *inter partes* review ("IPR"). The district court entered a binding, final judgment in accordance with that verdict, subject only to this Court's review for substantial evidence—a formidable burden for any appellant. Rembrandt cannot meet that burden.

In apparent recognition of that fact, Rembrandt invites this Court to bypass the district court's invalidity judgment entirely. Rembrandt's motion asserts that this Court "must" reverse the invalidity judgment (Mot. 5) pursuant to 35 U.S.C. § 315(e)(2) because the Patent Trial and Appeal Board (the "Board") ruled, in an IPR decided the same day that Rembrandt filed its reply brief in this appeal, that Facebook had not shown by a preponderance of the evidence that the '316 patent was unpatentable in light of a different body of prior art. But that agency ruling (which Facebook will appeal) cannot establish that the '316 patent is conclusively *valid*—nor can it supersede this Court's authority and responsibility to review the district court's final judgment of invalidity.

*First*, nothing in § 315(e)(2) compels this Court to vacate a jury verdict or ignore Facebook's responses to Rembrandt's appellate arguments. Rather, the statute applies only prospectively to assertions of invalidity by an IPR petitioner

before a district court or the International Trade Commission ("ITC") after issuance of a final Board decision.   Section 315(e)(2) is not a device for overturning an Article III court's final judgment of invalidity or for silencing an appellee who seeks to defend that judgment.  The statute thus has no impact on this Court's consideration of the district court judgment of invalidity.

*Second*, Rembrandt errs in suggesting that notions of traditional collateral estoppel support its strained interpretation of § 315(e)(2).  As this Court has made clear, collateral estoppel has no application here.

*Third*, Rembrandt's interpretation of § 315(e)(2) would offend the Constitution's separation of powers and must be rejected under principles of constitutional avoidance.  In Rembrandt's view, any appellate court (including the Supreme Court) *must* find Rembrandt's patent valid, reverse any contrary judgment, and enforce a patent that has been judicially determined to be a legal nullity—simply because an Executive Branch tribunal subsequently rejected other validity challenges.   That view, if accepted, would upend centuries of constitutional jurisprudence by allowing an agency tribunal to sit in review of the decisions of Article III courts.  This Court should avoid the constitutional problems that Rembrandt's interpretation would create and reject the implausible notion that Congress intended to authorize the Board to overturn final district court judgments of invalidity.  Rembrandt's motion should be denied.

**ARGUMENT**

## I.    Rembrandt's Argument Conflicts With The Text, Structure, And Purpose Of § 315(e)(2)

Rembrandt's motion proceeds from an erroneous reading of § 315(e)(2), which merely precludes a party from *seeking* a judgment of invalidity in a *district court* after the PTO has rejected that party's invalidity assertions in an IPR determination. The statute has no application here, because Facebook has already won its judgment of invalidity.

To discern Congress's intent, the Federal Circuit looks to "traditional tools" of statutory construction: the statute's text, structure, canons of construction, and legislative history. *See Timex V.I., Inc. v. United States*, 157 F.3d 879, 882 (Fed. Cir. 1998). Because statutory text "is Congress's final expression of its intent, if the text answers the question, that is the end of the matter." *Id.* The statutory estoppel defined by § 315(e)(2) applies only to invalidity contentions that are "assert[ed]" in "a civil action" arising under "section 1338 of title 28." 35 U.S.C. § 315(e)(2). Rembrandt cannot show that these elements are met.

### A.    Section 315(e) Does Not Prevent Facebook From Refuting Rembrandt's Attacks On The Judgment Below

Rembrandt's motion assumes that the district court's invalidity judgment must be overturned because Facebook raises an "assert[ion]" of invalidity on appeal. 35 U.S.C. § 315(e)(2). That is wrong. Facebook "asserted" invalidity in the district court, a year before issuance of the Board's decision. The jury found

3

by clear and convincing evidence that claims 4, 20, and 26 of the '316 patent are invalid as obvious.   The district court upheld that finding and entered final judgment of invalidity.  As much as Rembrandt would like to retry that case before this Court, Facebook is no longer required to "assert" invalidity on appeal.  Rather, the *only* relevant issue on appeal is whether the jury's invalidity verdict is supported by substantial evidence.  Unsurprisingly, § 315(e)(2) says nothing about that issue, and certainly does not purport to preclude an appellee (like Facebook) from defending a final invalidity judgment that it won before the district court.

"This court reviews judgments"—it does not retry cases; in order to overturn a judgment, the appellant must convince the Court that "the judgment cannot stand on the record created at trial."  *See Polaroid Corp. v. Eastman Kodak Co.*, 789 F.2d 1556, 1558 (Fed. Cir. 1986).  Rembrandt thus bears the burden to assert that the judgment of invalidity lacked substantial evidence or otherwise was infected by legal error.  Facebook has defended against Rembrandt's arguments regarding the sufficiency of the evidence on appeal, but it is no longer Facebook's burden to "assert" invalidity within the meaning of § 315(e)(2).  Indeed, had Facebook filed no responsive brief at all, this Court would still conduct its own independent review of the invalidity judgment below and would affirm as long as the judgment was supported by substantial evidence—the only consequence of failing to file such a brief would be that Facebook would not be heard at oral argument absent

the Court's permission. Fed. R. App. P. 31(c); *see also, e.g.*, *Allgeier v. United States*, 909 F.2d 869, 871 n.3 (6th Cir. 1990) ("[A]n appellee's failure to file a brief should normally carry with it only the oral argument sanction called for by the Rule," not "a decision in favor of the appellant."); *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1478 (9th Cir. 1992) (noting the "duty to affirm the judgment on any ground fairly supported by the record").[1]

### B.    Section 315(e)(2) Precludes A "Petitioner," Not The Courts

Rembrandt's argument fails for yet another reason:  It impermissibly construes § 315(e)(2) to bind not only the "petitioner," as the text provides, but also the courts.  That is plainly wrong.  Contrary to the sweeping relief requested by Rembrandt's motion, § 315(e)(2) does not require a court to do anything at all. It says nothing about reversing district courts or vacating judgments—as it surely would if Congress had intended such a radical form of estoppel.  Thus, even ignoring the limitation on the application of estoppel to "a civil action," *see infra* pp. 6-8, the statute would merely preclude arguments made by Facebook after the Board decision issued.  It would not divest this Court's authority to independently review the district court's judgment, or its duty to affirm that judgment if

---

[1] Even if estoppel somehow barred Facebook from advancing further arguments in defense of the verdict (which it does not), Facebook filed its appellee brief before the Board issued its decision.  Rembrandt cannot plausibly contend that § 315(e)(2) operates retroactively to erase Facebook's previous arguments or preclude this Court from considering them.

Rembrandt fails to show reversible error. The statute accordingly could not undermine a district court judgment entered before any estoppel arose.

### C.    Section 315(e)(2) Does Not Apply On Appeal

Section 315(e)(2) is also inapplicable here because this appeal is not a "civil action" arising "under section 1338 of title 28." 35 U.S.C. § 315(e)(2). Section 315(e)(2) leaves no doubt that its estoppel applies only in two limited settings: a "civil action" grounded in jurisdiction under 28 U.S.C. § 1338; and an ITC proceeding under § 337 of the Tariff Act of 1930. *Id.* Notably absent is any reference to appeals or to 28 U.S.C. § 1295, the statute that supplies *this* Court's jurisdiction to review district court judgments and ITC final decisions. *Expressio unius, exclusio alterius*: by referencing only trial court jurisdiction, Congress excluded appellate jurisdiction. Indeed, Rembrandt's own jurisdictional statement acknowledges this basic distinction. *See* Rembrandt's Opening Br. 1.

In tying its estoppel to civil actions under 28 U.S.C. § 1338, section 315(e)(2) necessarily limits its effect to district court proceedings. By its terms, 28 U.S.C. § 1338 expressly vests "original jurisdiction of any civil action" arising under the patent laws in the "district courts." 28 U.S.C. § 1338. Congress therefore limited § 315(e)(2)'s estoppel to original proceedings in the district courts arising under the patent laws.

The phrase "civil action" clearly refers to district court proceedings. 35

U.S.C. § 315(e)(2).  The U.S. Code repeatedly distinguishes between a "civil action" and an "appeal," making clear that the former refers to trial court proceedings and the latter to appellate proceedings.  *See, e.g.*, 28 U.S.C. §§ 596(a)(3), 1631, 1915(g).[2]  Other statutes addressing district courts' subject-matter jurisdiction, *see id.* §§ 1331, 1332(a), 1335(a), 1367(a)-(b), 1441(a), and venue, *see id.* §§ 1391(a)-(b), 1400(b), also uniformly refer to a "civil action."  For example, the special patent venue statute identifies the "judicial *district*" in which "[a]ny *civil action* for patent infringement may be brought."  *Id.* § 1400(b) (emphases added).  In contrast, statutes addressing *this* Court's jurisdiction speak only of "an appeal from" an order or judgment entered in a civil action.  *Id.* § 1295(c)(1), (2).  Moreover, the Patent Act uniformly employs "civil action" to refer to district court proceedings.  For example, Congress has authorized two mutually exclusive avenues for patent applicants seeking to challenge Board decisions under 35 U.S.C. § 134(a):  either an "appeal" to this Court (35 U.S.C. § 141(a)) or a "remedy by *civil action* against the Director in the United States District Court for the Eastern District of Virginia" (35 U.S.C. § 145 (emphasis added))—but the "civil action" route is unavailable if "appeal has been taken to the United States Court of Appeals for the Federal Circuit."  *Id.*  The same is true for

---

[2] Where Congress wishes "civil action" to include later appeals, it makes that specialized meaning clear by express definition.  *See, e.g.*, 28 U.S.C. § 2412(d)(2)(E).  It has not done so here.

derivations under 35 U.S.C. § 146.  Congress thus made clear in the Patent Act that "civil action" and "appeal" are two different and mutually inconsistent alternatives.

The Federal Rules of Civil Procedure are to the same effect, establishing the rules "in all civil actions" in the United States district courts, Fed. R. Civ. P. 1, where there is only "one form of action—the civil action," Fed. R. Civ. P. 2.  In contrast, the Federal Rules of Appellate Procedure govern the United States courts of appeals, Fed. R. App. P. 1, which are described as hearing "appeal[s]" from district courts, not civil actions, Fed. R. App. P. 3(a).  Even original proceedings in the courts of appeals are "review" or "enforcement" proceedings, Fed. R. App. P. 15(a)(1), 16—not "civil actions."

If more textual support were needed (it is not), § 315(e)(2)'s application to ITC proceedings further compels the conclusion that Congress limited the statutory estoppel to proceedings pending in lower tribunals, not those that have attained sufficient finality to reach this Court.  In the ITC context, § 315(e)(2) authorizes estoppel only "in a proceeding before the International Trade Commission under section 337 of the Tariff Act of 1930."  35 U.S.C. § 315(e)(2).  Although § 337 of the Tariff Act authorizes appeals to this Court, *see* 19 U.S.C. § 1337(c), the statutory estoppel provision manifestly does not apply to those appeals:  a proceeding before the ITC is obviously not a proceeding before this Court.

Under Rembrandt's strained interpretation of § 315(e)(2), this Court would

be bound by statutory estoppel in appeals challenging final district court judgments of invalidity, but would *not* be so bound in reviewing final ITC determinations of invalidity. It begs credulity to suggest that Congress intended this absurd result, which would afford a greater measure of authority and deference to the administrative decisions of the ITC than to the final judgments of Article III courts. This absurdity is compounded by the fact that ITC final decisions on invalidity do not, unlike district court judgments, carry preclusive consequences in subsequent litigation. *See Tex. Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1568-70 (Fed. Cir. 1996). The only plausible interpretation of § 315(e)(2) is one that does not elevate ITC decisions over final district court judgments, and instead limits the estoppel (in keeping with the plain text of the statute) to assertions of invalidity being raised before district courts or the ITC.

Largely ignoring the statutory text and structure, Rembrandt purports to divine what "Congress" meant from out-of-context snippets of legislative history. Mot. 5 n.11, 8 n.19, 10 n.25. That history—most of which is merely comments by individual Senators—is equivocal at best. For example, Senator Grassley stated that the purpose of the estoppel provisions was "to prevent petitioners from raising *in a subsequent challenge* the same patent issues that were raised or reasonably could have been raised in a prior challenge." 157 Cong. Rec. S952 (daily ed. Feb. 28, 2011) (emphasis added) (Mot. Ex. E). Senator Kyl stated similarly that the bill

9

"softens the could-have-raised estoppel that is applied by inter partes review against *subsequent civil litigation*." 157 Cong. Rec. S1375-76 (daily ed. Mar. 8, 2011) (emphasis added) (Mot. Ex. F). Nothing in these statements suggests that the estoppel could be applied for the first time on appeal, let alone that estoppel could be used to overturn the final result of a *prior* challenge.

### D. The Purpose Of § 315(e)(2) Was To Streamline Litigation By Barring Pending Or Subsequent District Court Litigation—Yet Rembrandt's Interpretation Only Increases Future Litigation

Rembrandt's view of a "civil action" as including the post-judgment, post-verdict appeal would lead to absurd results that would *increase*, not decrease, future litigation. As Rembrandt admits, the legislative history suggests that § 315's estoppel provision is meant to provide "quick and cost effective alternatives to litigation." H.R. Rep. No. 112-98, pt. 1, at 48 (2011), as reprinted in 2011 U.S.C.C.A.N. 67, 78 (Mot. Ex. H). Applying § 315 to preclude further litigation in the district court could advance that goal, since there would not yet be a final judicial adjudication that fixes the parties' respective rights. But statutory estoppel does not make sense when the case has gone all the way to final judgment—much less full appellate briefing on the merits. Twisting the text of § 315 to nullify a final judgment pending on appeal would be contrary to the efficiency goals that Congress sought to achieve, and is thus another reason why Rembrandt's argument should be rejected.

10

Accepting Rembrandt's argument would also multiply the proceedings in this dispute.  Facebook will appeal the Board's ruling.  In the meantime, however, Rembrandt would have this Court reverse the district court's invalidity judgment. Mot. 11.  If Facebook prevails in the IPR appeal, Facebook presumably would have to reopen proceedings in this case in an attempt to unwind the judicial rubberstamp of validity that Rembrandt now seeks—hardly an efficient or "lower cost" outcome.  Mot. 4.

Indeed, Rembrandt's rhetoric on "lower cost alternative[s] to civil litigation" (Mot. 4 (emphasis omitted)) rings hollow in light of Rembrandt's failure to seek a stay of the district court proceedings.  Rembrandt chose the Eastern District of Virginia as the forum to litigate, and "[p]resumably [] was prepared to litigate and to litigate to the finish."  *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 332 (1971).  Rembrandt presumably chose that district because of its reputation as a "rocket docket" that could bring patent cases to trial expeditiously. *See, e.g.*, *ComRent Int'l, LLC v. Palatini*, No. 13-5732, 2013 WL 5761319, at *5 (E.D. Pa. Oct. 24, 2013).  Having hoped for a swift victory in the district court, Rembrandt cannot now be heard to complain about duplicative proceedings.

If this Court were to accept Rembrandt's invitation to abandon its own review of the jury verdict and district court judgment of invalidity in favor of blindly implementing the Board's IPR ruling (which does not even purport to

11

address the prior art at issue below), Rembrandt would be free to assert this patent against more third parties despite it having already been found invalid by clear and convincing evidence. This would needlessly create further protracted litigation, forcing third parties to re-litigate the same issues of invalidity again and again—the same unacceptable outcome that caused the Supreme Court to overrule the mutuality limitation for estoppel as a "misallocation of resources" where "time and money are diverted from alternative uses—productive or otherwise—to relitigation of a decided issue." *Blonder-Tongue Labs.,* 402 U.S. at 329. Congress should not be presumed to have created such an unworkable and unreasonable situation. *See, e.g.*, *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 71 (1982).

## II. Collateral Estoppel Does Not Apply Between A Board Decision Of "Not Unpatentable" And A Jury Verdict Of "Invalidity" Because The Issues Are Not Identical

Rembrandt also purports to draw support for its interpretation of § 315(e)(2) from traditional collateral estoppel, also known as issue preclusion. Rembrandt does not argue that collateral estoppel applies, however, and for good reason: Not only does § 315(e)(2) evince Congress's judgment that collateral estoppel does not apply to a written decision by the Board, but Rembrandt cannot satisfy its elements in any event. For collateral estoppel to apply, the proponent must show:

> (1) the issue sought to be precluded is identical to one previously litigated; (2) the issue must have been actually determined in the prior proceeding; (3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding; (4) the prior

judgment must be final and valid; and (5) the party against whom estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum.

*Sedlack v. Braswell Servs. Grp., Inc.*, 134 F.3d 219, 224 (4th Cir. 1998). Rembrandt's invocation of collateral estoppel would fail because the issues before the Board and those before the district court were not identical.

Collateral estoppel "only applies if the issue in the instant action is identical to one decided in the first action." *A&D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1156 (Fed. Cir. 2014) (brackets, emphasis, and internal quotation marks omitted). And as the party seeking to invoke collateral estoppel, Rembrandt would have the burden of demonstrating that the elements are met. *See, e.g.*, *Sedlack*, 134 F.3d at 224; *RF Del., Inc. v. Pac. Keystone Techs., Inc.*, 326 F.3d 1255, 1261 (Fed. Cir. 2003). This Court, however, has repeatedly limited the application of collateral estoppel between the PTO and courts based on the lack of identity of issues. In *Ethicon, Inc. v. Quigg*, 849 F.2d 1422 (Fed. Cir. 1988), for example, this Court held that a district court determination that a patent is *not invalid* does not preclude the Board from reviewing patentability because "courts do not find a patent valid," and "a court's decision upholding a patent's validity is not ordinarily binding on another challenge to the patent's validity in either the courts or the PTO." *Id.* at 1429 n.3 (internal quotation marks and citation omitted). Accordingly, Rembrandt "cannot satisfy even the most basic principle of issue

preclusion—that the issue actually had been decided in the previous proceeding." *Johnson v. Whitehead*, 647 F.3d 120, 129 (4th Cir. 2011).

This proceeding and the IPR considered different prior-art references under different standards of proof to produce different-in-kind determinations. As this Court has recognized, the PTO and the courts "take different approaches in determining invalidity and on the same evidence could quite correctly come to different conclusions," and thus there is "nothing untoward about the PTO upholding the validity of a reexamined patent which the district court later finds invalid." *Ethicon*, 849 F.2d at 1428. "This is essentially what occurs when a court finds a patent invalid after the PTO has granted it." *Id.* As the forums can consider different evidence, different results "may be entirely reasonable." *Id.*

Moreover, the references and grounds raised in front of the Board are not the same as those before the district court. "Each theory of invalidity is a separate issue," which bars the application of collateral estoppel across proceedings. *See TASER Int'l, Inc. v. Karbon Arms, LLC*, 6 F. Supp. 3d 510, 519 (D. Del. 2013). This Court's predecessor held that anticipation is a different issue from obviousness even when the reference is the same. *See In re Oelrich*, 666 F.2d 578, 580 n.2 (C.C.P.A. 1981) (discussing res judicata). Here, the district court entered final judgment based on a jury verdict that the '316 patent was obvious over the Wang and Rasansky patents. The Board, in contrast, determined that the patent

was "not … unpatentable" over four different references:  Salas, Tittel (1997), Parker, and Angles.  Mot. Ex. A, at 22-23.[3]  Because the invalidity issues actually litigated are different, collateral estoppel cannot apply.

While this Court has held that final determinations of *invalidity* by the district court or *unpatentability* by the PTO can have a preclusive effect, *see, e.g.*, *Dana Corp. v. NOK, Inc.*, 882 F.2d 505, 507 (Fed. Cir. 1989), it has never held that a determination of "not unpatentable" precludes, by virtue of collateral estoppel, a judgment of *invalidity* on different grounds.  On the contrary, this Court has held in similar circumstances that a judicial rejection of invalidity challenges is "not ordinarily binding on another challenge to the patent's validity, in either the courts or the PTO." *Ethicon*, 849 F.2d at 1429 n.3 (citation omitted).  Indeed, a district court cannot declare a patent "valid" at all—such a ruling is not "appropriate." *See Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1569 (Fed. Cir. 1987).  A Board determination that certain claims of the patent are "not unpatentable" based on certain grounds before it is no different, and Rembrandt cites no support for collateral estoppel in this context.

While Rembrandt analogizes this appeal to *Fresenius USA, Inc. v. Baxter International, Inc.*, 721 F.3d 1330 (Fed. Cir. 2013), the issues there concerned a

---

[3]  The only prior-art reference common to the district court and the IPR was the Angles reference, and the Board did not address that reference in any way because other aspects of its decision obviated the need to do so.  Mot. Ex. A, at 22-23.

Board determination of unpatentability (cancelling claims), *see id.* at 1332, and thus were quite different than the invalidity issue here. *Fresenius* confirms that a determination that the "patents were not invalid" is a "distinct issue" from the "subsequent invalidation of the asserted patents." *Id.* at 1343. Moreover, *Fresenius* is not even a collateral estoppel case; rather, the PTO was merely cancelling patent rights it had erroneously issued. As this Court noted, the PTO's decision in *Fresenius* was "binding *not because of collateral estoppel*, but because Congress has expressly delegated reexamination authority to the PTO under a statute requiring the PTO to cancel rejected claims, and cancellation extinguishes the underlying basis for suits based on the patent." *Id.* at 1344 (emphasis added).

No precedent warrants overturning a district court's final judgment of invalidity based on blind adherence to a Board determination that a patent is "not unpatentable" on other grounds. Because the issues between the Board proceeding and the district court are not identical, collateral estoppel cannot be invoked.

## III.    Rembrandt's Construction Of § 315(e)(2) Would Violate The Separation Of Powers

Rembrandt's attempt to apply § 315(e)(2) as a bar to this Court's review of a final district court judgment should be rejected for yet another reason: By construing § 315(e)(2) to give an administrative agency the authority to overturn a final district court judgment of invalidity, Rembrandt's position would raise serious constitutional difficulties. When one of two proffered statutory

16

interpretations would raise a "multitude of constitutional problems, the other should prevail." *Clark v. Martinez*, 543 U.S. 371, 380-81 (2005).

Under the Constitution, the decisions of Article III courts are "subject to review only by superior courts in the Article III hierarchy." *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 218-19 (1995). Accordingly, Congress may not "vest review of the decisions of Article III courts in officials of the Executive Branch." *Id.* at 218; *see also, e.g.*, *Chi. & S. Air Lines v. Waterman S.S. Corp.*, 333 U.S. 103, 114 (1948); *Hayburn's Case*, 2 U.S. (2 Dall.) 408, 410 n.* (1792) (barring revision of judicial judgments by the Executive Branch or legislature). The political branches may not, for example, grant Article III courts the ability to decide a case, but then use their abilities to control judicial procedure and jurisdiction to require the Article III court to reach a substantive legal result that is "precisely contrary" to the court's application of the governing substantive law. *United States v. Klein*, 80 U.S. (13 Wall.) 128, 146-47 (1871). "[I]f a judgment of an Article III court were subject to revision by a coordinate branch, it would not be the exercise of judicial power," and "the court's decision would in effect be merely advisory." *Town of Deerfield, N.Y. v. FCC*, 992 F.2d 420, 428 (2d Cir. 1993) (emphasis omitted). To control the decisions of the courts, the political branches must exercise their political powers to "change the underlying law," and not simply order the courts to adopt their view of the merits of a particular dispute. *Guandong Wireking*

*Housewares & Hardwares Co. v. United States*, 745 F.3d 1194, 1201 (Fed. Cir. 2014). Thus, the final judgment of the district court is reviewable only by an Article III court exercising its judicial power.

Rembrandt's motion seeking automatic reversal of a judgment of invalidity entered by an Article III court based solely on a subsequent Executive agency decision is a radical departure from these fundamental separation-of-powers principles. That is especially so where, as here, the agency decision involves different evidence evaluated under a different legal standard, and has not been reviewed by any court. Construing § 315(e)(2) in the manner Rembrandt suggests would abdicate the Article III power and violate this Court's obligation to affirm the district court's judgment absent reversible error.

Indeed, Rembrandt's view of § 315(e)(2) would logically extend to the Supreme Court as well—elevating an agency determination over that of even the highest court in the land. For example, if this Court affirms the district court's invalidity judgment and Rembrandt obtained Supreme Court review, under Rembrandt's reading, the agency decision would require the Supreme Court to vacate the district court judgment and this Court's affirmance of it. Under our constitutional scheme, however, Article III courts are "subject to review only by superior courts in the Article III hierarchy," *Plaut*, 514 U.S. at 218-19, and the Supreme Court must remain "[S]upreme." U.S. Const. art. III, § 1. Rembrandt's

18

overbroad view of estoppel thus cannot be correct, and Congress should not be deemed to have intended such an unconstitutional result.

Rembrandt argues that *Fresenius* authorized this abnegation of the separation of powers by purportedly holding that "there was no Article III impediment to using a Patent Office ruling to collaterally estop court proceedings." Mot. 6. But Rembrandt distorts the holding in *Fresenius*. As noted above, *Fresenius* did not apply collateral estoppel but merely recognized that a patent's "cancellation extinguishes the underlying basis for suits based on the patent." 721 F.3d at 1344. The fact that the same Executive Branch agency that issued a patent may later revoke it (thereby extinguishing the underlying legal predicate for a patent infringement suit) says nothing about whether the agency may also overturn a final district court judgment of invalidity and thereby compel the federal courts to enforce a patent they have adjudicated to be null and void. Moreover, the legal implications arising from the cancellation in *Fresenius* arose only *after* the administrative decision had been reviewed and affirmed by an Article III court.[4]

Faced with two competing constructions of the statute, this Court must reject the constitutionally problematic alternative. Here, the plain-language reading of

---

[4] The Supreme Court recently stated that administrative collateral estoppel should not be "jettison[ed] . . . to avoid potential constitutional concerns." *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1304 (2015). But *B&B Hardware* examined only the applicability of administrative collateral estoppel *prior* to a district court ruling on the dispositive legal issue. *Id.* at 1302. And collateral estoppel is inapplicable here in any event, as shown in Part II above.

§ 315(e)(2) urged by Facebook does not compel either the Supreme Court or this Court to vacate a final judgment of invalidity rendered by an Article III court. That same reading of § 315(e)(2) is consistent with the statutory text and legislative history. Absent a clear statement from Congress, courts should not presume that Congress attempted to restrict both the Supreme Court's and this Court's power to independently review final judgments while granting an Executive agency the authority to overturn the judgment of an Article III court by administrative fiat. Established principles of statutory interpretation and constitutional avoidance preclude that result. *Martinez*, 543 U.S. at 380-81. Rembrandt's expansive interpretation of § 315(e)(2) should be rejected.

## CONCLUSION

For the foregoing reasons, Rembrandt's motion should be denied.

Dated: August 6, 2015

Respectfully submitted,

/s/ *Thomas G. Hungar*

Heidi L. Keefe
Mark R. Weinstein
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
(650) 843-5000

Michael G. Rhodes
COOLEY LLP
101 California Street, 5th Floor
San Francisco, CA 94111
(415) 693-2000

Thomas G. Hungar
  *Principal Attorney*
Lucas C. Townsend
Blair A. Silver
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500
(202) 530-9696 (fax)
THungar@gibsondunn.com

*Counsel for Facebook, Inc.*

20

## CERTIFICATE OF SERVICE

I, Thomas G. Hungar, hereby certify that I caused the foregoing OPPOSITION TO REMBRANDT'S MOTION TO ENFORCE ESTOPPEL FROM IPR FINAL WRITTEN DECISION to be filed via the Court's CM/ECF system and served on the following counsel of record who have registered for such service on August 6, 2015:

Thomas M. Melsheimer, Esq.
Fish & Richardson, P.C.
1717 Main Street, Suite 5000
Dallas, TX  75201
Tel:  (214) 292-4001
Fax:  (214) 747-2091
melsheimer@fr.com

John S. Goetz, Esq.
Fish & Richardson, P.C.
601 Lexington Avenue, 52nd Floor
New York, NY  10022
Tel: (212) 641-2277
Fax: (212) 258-2291
goetz@fr.com

Lawrence K. Kolodney, Esq.
Robert E. Hillman, Esq.
Fish & Richardson, P.C.
One Marina Park Drive
Boston, MA  02210
Tel:  (617) 542-5070
Fax: (617) 542-8906
kolodney@fr.com

Ahmed J. Davis, Esq.
Fish & Richardson, P.C.
1425 K Street, N.W., 11th Floor
Washington, DC  20005
Tel:  (202) 783-5057
Fax: (202) 783-2331
adavis@fr.com

Rebecca C. Grant, Esq.
Fish & Richardson, P.C.
550 Arguello Street, Suite D
Redwood City, CA  90463
Tel: (650) 839-5070
Fax: (650) 839-5071
rgrant@fr.com

John A. Dragseth, Esq.
Fish & Richardson, P.C.
3200 RBC Plaza,
60 South Street
Minneapolis, MN  55402
Tel: (612) 335-5070
Fax: (612) 288-9696
dragseth@fr.com

*Counsel for Rembrandt Social Media, LP*

/s/ *Thomas G. Hungar*
Thomas G. Hungar
*Counsel for Facebook, Inc.*