*In The*

# United States Court of Appeals
# for the Federal Circuit

---

## REMBRANDT SOCIAL MEDIA, LP,

*Plaintiff-Appellant*,

- v -

## FACEBOOK, INC.,

*Defendant-Appellee*.

---

Appeal from the United States District Court for the
Eastern District of Virginia in Case No. 1:13-CV-00158, Judge T.S. Ellis III.

---

### REPLY ON MOTION TO ENFORCE ESTOPPEL
### FROM IPR FINAL WRITTEN DECISION

THOMAS M. MELSHEIMER
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
(214) 747-5070

JOHN A. DRAGSETH
FISH & RICHARDSON P.C.
60 South Sixth Street
Suite 3200
Minneapolis, MN 55402
(612) 335-5070

*Attorneys for Plaintiff-Appellant Rembrandt Social Media, LP*

*(For Continuation of Appearances See Inside Cover)*

August 17, 2015

AHMED J. DAVIS
FISH & RICHARDSON P.C.
1425 K Street, NW, 11th Floor
Washington D.C.  20005
Telephone: (202) 783-5070

JOHN S. GOETZ
FISH & RICHARDSON P.C.
601 Lexington Avenue, 52nd Floor
New York, NY 10022-4611
Telephone: (212) 765-5070

REBECCA CHARNAS GRANT
FISH & RICHARDSON P.C.
500 Arguello Street, Suite D
Redwood City, CA 90463
Telephone: (650) 839-5070

ROBERT E. HILLMAN
LAWRENCE K. KOLODNEY
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02110
(617) 542-5070

*Attorneys for Plaintiff-Appellant Rembrandt Social Media, LP*

# CERTIFICATE OF INTEREST

Counsel for Rembrandt Social Media, LP, certifies the following:

1.     The full name of every party or amicus represented by me is:  Rembrandt Social Media, LP

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:  N/A.

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are: None

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

   Fish & Richardson P.C.:  John A. Dragseth, Robert E. Hillman, Thomas M. Melsheimer, Juanita R. Brooks, Ruffin Cordell, Richard A. Sterba, Clarissa Renee Skinner, Ahmed J. Davis, John S. Goetz, Danielle Williams, Lawrence K. Kolodney, Rebecca C. Grant, Rex A. Mann, Daniel R. Gopenko

Dated:  August 17, 2015

/s/ *John A. Dragseth*
John A. Dragseth

iii

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................. 1

ARGUMENT ....................................................................... 2

I.    Congress's Section 315 Estoppel Provision Borrows Language
      from Existing Estoppel Case Law that Stops Litigation ............ 2

II.   "Civil Actions" Are Non-Criminal Federal Court Actions, not
      Just the District Court Phases of Such Actions ......................... 5

III.  None of Facebook's Other Arguments Address Relevant
      Points ........................................................................... 7

IV.   Facebook's Effort to Avoid the Traditional Estoppel Language
      of the Statute Is Bad in Practice and Policy .............................. 8

CONCLUSION ................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahuelhawa v. U.S.*,
    556 U.S. 816 (2009) ......................................................... 5

*Aspex Eyewear v. Zenni Optical*,
    713 F.3d 1377 (Fed. Cir. 2013) ...................................... 2

*B&B Hardware v. Hargis Industries*,
    135 S.Ct. 1293 (2015) .................................................... 7

*Bonneville Assocs. v. U.S.*,
    43 F.3d 649 (Fed. Cir. 1994) .......................................... 8

*Dana Corp. v. NOK, Inc.*,
    882 F.2d 505 (Fed. Cir. 1989) ..................................... 2, 4

*Di Bella v. U.S.*,
    369 U.S. 121 (1962) ........................................................ 5

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
    721 F.3d 1330 (Fed. Cir. 2013) .............................. 7, 8, 9

*Gavette v. OPM*,
    808 F.2d 1456 (Fed. Cir. 1986) ...................................... 5

*Key Stone Retaining Wall Sys. v. Westrock, Inc.*,
    997 F.2d 1444 (Fed. Cir. 1993) ...................................... 4

*Mars, Inc. v. Kabushiki-Kaisha Nippon Conlux*,
    24 F.3d 1368 (Fed. Cir. 1994) ........................................ 3

*Parklane Hosiery v. Shore*,
    439 U.S. 322 (1979) ........................................................ 2

*Terry Properties, Inc. v. Standard Oil*,
    799 F.2d 1523 (11th Cir. 1986) ...................................... 5

v

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*U.S. v. Shabani,*
  513 U.S. 10 (1994) ................................................................ 3

*Vacca v. Viacom Broadcasting of Mo.,*
  875 F.2d 1337 (8th Cir. 1989) .......................................... 5

*Vas-Cath, Inc. v. Curators of Univ. of Mo.,*
  473 F.3d 1376 (Fed. Cir. 2007) ........................................ 5

**Statutes**

28 U.S.C. § 596(a)(3) ............................................................ 6

28 U.S.C. § 1338 .................................................................... 6

28 U.S.C. § 1631 .................................................................... 6

28 U.S.C. § 1915(g) ............................................................... 6

28 U.S.C. § 2412(d)(1)(A) ..................................................... 5

**Other Authorities**

154 Cong. Rec. S9987 (daily ed. Sep. 27, 2008) .................. 3

157 Cong. Rec. S952 (daily ed. Feb. 28, 2011) .................... 8

Black's Law Dictionary 32 (9th Ed. 2009) ........................... 5

H.R. Rep. No. 112-98, pt. 1 (2011) ....................................... 8

**INTRODUCTION**

Facebook does not dispute that Congress created a statutory estoppel whose language—about "asserting" a claim—mimics language courts have long used to apply case-ending collateral estoppel. That language uniformly applies to a party's ability to defend a claim on appeal and to a court's ability to consider the claim. Congress was most definitely aware of this usage when it adopted Section 315, which should apply just like traditional collateral estoppel to end the collateral case.

None of Facebook's arguments undercut this fundamental point. Facebook gets nowhere by establishing that "appeal" is not synonymous with "action," because a "civil action" encompasses the whole of federal court litigation—both trial and appeal. That IPR issues may differ from litigation issues is irrelevant because Congress borrowed language for the *effect* of its estoppel but plainly stated what *triggers* its estoppel, which does not depend on having common issues. There are also no balance of power concerns, because Congress set the balance between the agency and courts in Section 315, and the Board here did not address the judgment. And Facebook does not even deal with its approach's practical problems, which Congress surely would not have created, including the potential for inconsistent results and encouragement of game-playing through the seeking of stays or extensions to manipulate case timing.

1

# ARGUMENT

## I. Congress's Section 315 Estoppel Provision Borrows Language from Existing Estoppel Case Law that Stops Litigation

For decades, collateral estoppel has been phrased as estopping a party "from asserting a claim"—the result being to cut off any continuation of a claim (not just a parties' assertions), whether at the district court or on appeal. For example, the Supreme Court has explained that collateral estoppel "precludes a plaintiff 'from ***asserting a claim*** that the plaintiff had previously litigated and lost . . .'"[1] This Court has referred to collateral estoppel applied on appeal as blocking a party from "***asserting in this litigation that that patent is valid.***"[2] The ***result*** of blocking a party's "assertions" on a point, such as asserting that a patent is invalid, is not merely that the party must be quiet, or that the party is only allowed to make its pre-verdict invalidity arguments, but that the issue is blocked and the Court will not consider it.[3]

Congress borrowed the "assert" language from judge-made collateral estoppel decisions for its statutory collateral estoppel in Section 315(e)(2), which notes that an IPR petitioner "***may not assert*** . . . in a civil action . . . that the claim is invalid."

---

[1] *See, e.g.*, *Aspex Eyewear v. Zenni Optical*, 713 F.3d 1377, 1380 (Fed. Cir. 2013) (quoting *Parklane Hosiery v. Shore*, 439 U.S. 322, 329 (1979)) (emphasis added).

[2] *Dana Corp. v. NOK, Inc.*, 882 F.2d 505, 507 (Fed. Cir. 1989) (emphasis added).

[3] *See id.* (holding that, despite the fact that the patentee had a judgment from the district court that the patent was not invalid and was only seeking to uphold that judgment, the patent was invalid and the patentee was collaterally estopped on appeal "from asserting in this litigation that [the] patent is valid").

Congress is presumed to have understood the existing estoppel law when it crafted its own statutory estoppel provision, and to have intended its matching language to have a matching result.[4]  Indeed, Congress made clear with other estoppel language in the AIA that it was borrowing from collateral estoppel jurisprudence.[5]  The familiar collateral estoppel language mandates the familiar outcome: even on appeal, estoppel may be raised, and the Court must reverse the invalidity judgment.

Facebook ignores this connection and parses the statute to take the words out of the context in which Congress used them.  For example, Facebook argues (at 3-5) that "may not assert" refers only to its ability to argue, and only before a jury verdict.  Facebook cites no authority for such a distinction, cites no area of law in which a similar distinction has been made, cites no logical reason why Congress would draw such a line, and never addresses that courts have used the same language for decades to express when a party's claim is finished, not merely when the party

---

[4] *E.g.*, *U.S. v. Shabani*, 513 U.S. 10, 13 (1994) (referring to "the settled principle of statutory construction that, absent contrary indications, Congress intends to adopt the common law definition of statutory terms"); *Mars, Inc. v. Kabushiki-Kaisha Nippon Conlux*, 24 F.3d 1368, 1372 (Fed. Cir. 1994).

[5] For example, the legislative history discusses "privity" in the AIA estoppel context—stating that it is "borrowed from the common law of judgments"—and cites a case discussing how "[p]rivity is essentially a shorthand statement that collateral estoppel is to be applied . . . ." 154 Cong. Rec. S9987 (daily ed. Sep. 27, 2008) (Ex. G to Motion).

must close its mouth.[6]  Facebook's "may not assert" argument also has practical problems.  For example, Facebook (at 10) admits the estoppel would apply to pending district court litigation, yet under Facebook's interpretation of "assert," it would not be asserting invalidity during post-trial motions at the district court level (e.g., JMOL and new trial motions).  Moreover, under Facebook's interpretation, it could even argue that after closing arguments at a jury trial it is no longer asserting invalidity, so if a Final Written Decision was issued during jury deliberations, there would be no estoppel.

Facebook further asserts (at 5-6) that the Court can move forward even without argument from Facebook.[7]  But again, Facebook ignores the fact that cases applying estoppel on the same language do not refer to a court's discretion to apply an estoppel, and that with Facebook blocked from making the claim, no controversy

---

[6] *Key Stone Retaining Wall Sys. v. Westrock, Inc.*, 997 F.2d 1444 (Fed. Cir. 1993) (party was "assert[ing] that the '876 patent is invalid" even though it won invalidity judgment); *Dana*, 882 F.2d at 507 (Dana was "asserting in this litigation that the patent is valid" even though it had a judgment of no invalidity).  Facebook cites only uncontroversial statements about appeal burdens, made absent any estoppels.

[7] Facebook contends in a mere footnote (note 1) that Section 315(e)(2) cannot apply "retroactively" apply to erase Facebook's previous arguments, yet even Facebook admits that Section 315(e)(2) can apply to already pending district court litigation (at 10)—and in that case, it would certainly erase whatever arguments Facebook had previously made in the pending district court case.  Regardless, Facebook has no authority for its "retroactive" argument.

supports unilateral action by the Court.[8]  Facebook provides no support for its hy-pertechnical distinctions that run contrary to the case law.

## II. "Civil Actions" Are Non-Criminal Federal Court Actions, not Just the District Court Phases of Such Actions

A "civil action" is a litigation that involves civil matters, in contrast to a "criminal action."  It is the whole action, both district court and appellate.  For example, this Court and the Supreme Court have both recognized that their work is part of the "civil action."[9]  This Court has even recognized that an appeal from an administrative board becomes a "civil action" when it reaches the Federal Circuit.[10]  These readings are consistent with the ordinary meaning of "action," which is a "civil or criminal judicial proceeding."[11]

---

[8] *See, e.g.*, *Vacca v. Viacom Broadcasting of Mo.*, 875 F.2d 1337, 1341 (8th Cir. 1989) ("It follows that we are bound by this finding of fact under the doctrine of collateral estoppel."); *Terry Properties, Inc. v. Standard Oil*, 799 F.2d 1523, 1536 (11th Cir. 1986) ("As we shall explain shortly, we are bound by this finding under principles of collateral estoppel.").

[9] *See Di Bella v. U.S.*, 369 U.S. 121, 125 (1962) ("Congress expanded the latitude for intermediate *appeals __in civil actions__* through . . . ." (emphasis added)); *Vas-Cath, Inc. v. Curators of Univ. of Mo.*, 473 F.3d 1376, 1381-82 (Fed. Cir. 2007).

[10] *Gavette v. OPM*, 808 F.2d 1456, 1462 (Fed. Cir. 1986) ("[T]he EAJA applies to appeals from the board to the Federal Circuit, *because such appeals are judicial proceedings or 'civil actions'* under 28 U.S.C. § 2412(d)(1)(A)," noting that post-*Olsen*, Congress amended the statute to recognize that appeals from the board to the Federal Circuit are "civil actions") (emphasis added).

[11] Black's Law Dictionary 32 (9th Ed. 2009) (attached as Ex. 1); *see Ahuelhawa v. U.S.*, 556 U.S. 816, 821 (2009) (relying on Black's Law Dictionary for statutory interpretation).

Such general meaning for "action" is also consistent with other relevant parts of the code. For example, Section 282 of Title 35 lists the defenses that are available in "***any action*** involving the validity or infringement of a patent" (emphasis added)—certainly, these defenses do not disappear when an appeal occurs.[12]

Facebook (at 6) uses the maxim *expressio unius, exclusio alterius* to suggest that because the statute says "action" rather than "appeal," it excludes appeals. That maxim applies, however, when two items are mutually exclusive, not when the included item encompasses the excluded one. As explained, an "action" is different than an "appeal" but is wholly inclusive of the action's district court and appeal phases, and Facebook cites nothing to the contrary. Finally, Facebook is actually harmed by its citation of Section 315's mention of "arising under 28 U.S.C. § 1338," which in turn gives district courts "original jurisdiction of any civil action" arising under the patent law, because there would be no need to say the district court has "***original*** jurisdiction" if in fact it was the ***only*** place for the civil action.

In sum, an "action" by its common meaning is a judicial proceeding, and Facebook proves no more than the fact that an appeal is not an action, without ever

---

[12] Facebook cites provisions that either support Rembrandt's position or merely indicate that "appeal" and "action" are not synonyms. *See, e.g.*, 28 U.S.C. § 596(a)(3) (noting that "A member of the division of the court may not hear or determine any such civil action or any appeal of a decision in any such civil action."); 28 U.S.C. § 1631 (similar); 28 U.S.C. § 1915(g) (similar). Facebook's citation (at 7) to the alternatives available for review of Patent Office decisions under § 134(a) also merely shows that an appeal is different from a civil action—i.e., the two are not synonyms.

disproving that an appeal is part of an action.

### III.    None of Facebook's Other Arguments Address Relevant Points

Facebook's remaining two arguments also miss their mark.  First, Facebook is wrong that the issues between the IPR and the litigation must be the same for this statutory estoppel to apply, because Congress in Section 315 borrowed only the language for the ***result*** of the estoppel, but Congress expressly stated the ***trigger*** (mere issuance of a Final Written Decision).[13]

Second, Facebook is wrong about separation-of-powers issues, because Congress set the relative roles of the agency and court, which Facebook tacitly admits it could do, and the Board never reviewed or addressed the district court's judgment. Rather, the Board performed an administrative act (in response to Facebook's own action in seeking the IPR)—issuing a Final Written Decision—that, ***by statute,*** deprives Facebook of the right to maintain an invalidity challenge in this civil action. Indeed, the separation of powers issues here are less than those rejected in *Fresenius*,[14] because that case involved ex parte reexamination, where Congress has set no statutory estoppel.  Facebook's loss of its right here is no more constitutionally problematic than other election-of-remedies rules that deprive a party of standing to

---

[13] The Supreme Court also recently held in *B&B Hardware v. Hargis Industries*, 135 S.Ct. 1293, 1308-09 (2015), that collateral estoppel can apply between the Office and litigation though the forums' procedures may be different.  Facebook's passing attempt to distinguish *B&B* (at 19 n.4) does not distinguish it on any relevant point.

[14] *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330 (Fed. Cir. 2013).

pursue litigation based on a party's choice to pursue administrative remedies instead.[15]   The only difference here is that the litigation bar enters into force after the administrative proceeding is complete, rather than at its initiation.

### IV.   Facebook's Effort to Avoid the Traditional Estoppel Language of the Statute Is Bad in Practice and Policy

Giving defendants an option to take one route with their paper-based prior art brings clarity and efficiency, as Congress intended.  Section 315(e)(2) tells defendants to pick the alternative of one route, avoiding duplicative proceedings and the problems that result.  As just one example, it eliminates risks of inconsistent results like those in *Fresenius*.  And it eliminates any "race to finality" from parallel proceedings, and resulting game-playing—e.g., seeking or opposing extensions for improper purposes to place one case ahead of the other.  A proper reading of Section 315 will result in simplified proceedings, and eliminate the problems Congress faced with the *inter partes* reexamination system, where the estoppel did not kick in until the end of the process—too late to avoid the problems of parallel proceedings.

The legislative history also uniformly shows that Congress chose such an "alternative-based" approach avoid such problems.[16]   Facebook (at 8-9) calls the legis-

---

[15] *See, e.g., Bonneville Assocs. v. U.S.*, 43 F.3d 649, 653 (Fed. Cir. 1994) ("[O]nce a contractor [elects] to appeal the CO's final decision to a [board] or to the court of Federal Claims, the contractor can no longer pursue its claim in the other forum.").

[16] *See, e.g.*, H.R. Rep. No. 112-98, pt. 1, at 48 (2011) (Ex. H to Motion); 157 Cong. Rec. S952 (daily ed. Feb. 28, 2011) (Ex. E to Motion).

lative history "equivocal at best," but largely ignores the legislative history describing IPR as being an "alternative" to raising paper-based prior art in litigation.

If Facebook's position were the law, no valid explanation would exist for Congress moving estoppel timing from the proceeding's very end for *inter partes* reexamination (many years after institution) up to the Final Written Decision for IPR (one year post-institution).  Specifically, the late estoppel created problems like we see in *Fresenius*, with dueling appeals out of the Patent Office and the district court.[17] The move of the estoppel up ensured for the most part that the estoppel could be applied at the earliest practical point and that inconsistent findings would not move forward in parallel.  Under Facebook's approach, the timing change would cause the estoppel to apply only in cases where the docket is slower, but not where it is faster (e.g., the rocket docket of the Eastern District of Virginia).  Facebook provides no explanation why Congress would move the date in such a manner.

Facebook's one policy answer (at 11) is that **this particular case** could become more complex if the Court vacates and remands the future appeal of the IPR decision.  But that hypothetical complexity—which would only occur in the unlikely

---

[17] Facebook's cite to *Fresenius* (at 16) that "[n]o precedent warrants overturning a district court's final judgment of invalidity based on blind adherence to a Board determination that a patent is 'not unpatentable'" misses the mark.  Rembrandt does not argue that the Board's validity decision trumps the district court; rather, **Congress** has stated that at the point the Board makes a final decision, **whatever the result**, estoppel is then applied.

event that the Board and the district court were both reversed—could still occur even under Facebook's interpretation of the statute.[18]

Moreover, any complexity here is of Facebook's making. If it had used the IPR properly, as an alternative rather than a supplement to litigation for paper-based art, this case would have had the streamlined effect Congress intended by Section 315's estoppel. Facebook instead bet that it could win in both venues and not be estopped—certainly it cannot rely on the fact that it lost that bet as a mechanism to manufacture additional complexity to supports its positions here.

## CONCLUSION

Facebook never addresses the fact that Section 315 uses classic estoppel language and thus should have the effect of classic estoppel in terms of whether it will cut off a litigation or allow it to keep moving. The Court should reverse the judgment of invalidity for the '316 claims, both due to estoppel, and independently, for the reasons explained in Rembrandt's appellate briefs on the merits.

---

[18] For example, a Final Written Decision may bar invalidity defenses at a later trial, and may then be vacated on appeal, with an infringement finding from the trial being affirmed. The possibility of appellate reversal of the Board after an estoppel applies is unavoidable, and complexity does not depend on whether the estoppel applies before or after trial.

Dated:  August 17, 2015                 Respectfully submitted,


                                        /s/ *John A. Dragseth*

                                        Robert E. Hillman
                                        Lawrence K. Kolodney
                                        FISH & RICHARDSON P.C.
                                        One Marina Park Drive
                                        Boston, MA 02110
                                        Telephone: (617) 542-5070
                                        Hillman@fr.com
                                        Kolodney@fr.com

                                        Thomas M. Melsheimer
                                        FISH & RICHARDSON P.C.
                                        1717 Main Street, Suite 5000
                                        Dallas, TX  75201
                                        Telephone: (214) 747-5070
                                        melsheimer@fr.com

                                        Ahmed J. Davis
                                        FISH & RICHARDSON P.C.
                                        1425 K Street, NW, 11th Floor
                                        Washington D.C.  20005
                                        Telephone: (202) 783-5070
                                        davis@fr.com

                                        John S. Goetz
                                        FISH & RICHARDSON P.C.
                                        601 Lexington Avenue, 52nd Floor
                                        New York, NY 10022-4611
                                        Telephone: (212) 765-5070
                                        goetz@fr.com


                                        Rebecca Charnas Grant
                                        FISH & RICHARDSON P.C.
                                        500 Arguello Street, Suite 500
                                        Redwood City, CA 90463
                                        Telephone: (650) 839-5070
                                        rgrant@fr.com

JOHN A. DRAGSETH
FISH & RICHARDSON P.C.
60 South 6th Street, Suite 3200
Minneapolis, MN 55402
Telephone:  (612) 335-5070
dragseth@fr.com

*Attorneys for Appellant,*
*Rembrandt Social Media, LP*

## <u>CERTIFICATE OF SERVICE AND FILING</u>

I certify that I electronically filed the foregoing document using the Court's CM/ECF filing system. All counsel of record were served via CM/ECF on August 17, 2015.

Mark R. Weinstein                      *Attorneys for Appellee*
Heidi L. Keefe
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
mweinstein@cooley.com
hkeefe@cooley.com

Michael G. Rhodes
COOLEY LLP
101 California Street, 5th Floor
San Francisco, CA 94111-5800
rhodesmg@cooley.com

Thomas G. Hungar
Lucas C. Townsend
Blair A. Silver
Heidi L. Keefe
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
THungar@gibsondunn.com
LTownsend@gibsondunn.com
BSilver@gibsondunn.com

*/s/ John A. Dragseth*
John A. Dragseth

EXHIBIT

"1"

# Black's Law Dictionary®

## Ninth Edition

**Bryan A. Garner**
Editor in Chief



A Thomson Reuters business

Mat #40776543
Mat #40776546—deluxe

"BLACK'S LAW DICTIONARY" is a registered trademark of Thomson Reuters.
Registered in U.S. Patent and Trademark Office.

COPYRIGHT © 1891, 1910, 1933, 1951, 1957, 1968, 1979, 1990 WEST PUBLISHING CO.

© West, a Thomson business, 1999, 2004

© 2009 Thomson Reuters
      610 Opperman Drive
      St. Paul, MN 55123
      1–800–313–9378

Printed in the United States of America

**ISBN:** 978–0–314–19949–2
**ISBN:** 978–0–314–19950–8—deluxe

 TEXT IS PRINTED ON 10% POST CONSUMER RECYCLED PAPER



*civil law.* A purchaser's action to recover for his overpayment for a defective item. Cf. *actio redhibitoria.* Pl. *actiones quanti minoris.*

"If a defect appeared which had not been so declared the buyer, if he sued within six months, could claim rescission of the sale by the *actio redhibitoria*, and, if within twelve months, could claim the difference between the price paid and the actual value of the defective slave or animal by the *actio quanti minoris*. In both actions the knowledge or ignorance of the seller was irrelevant: liability was strict." Barry Nicholas, *An Introduction to Roman Law* 181 (1962).

**actio quod jussu** (ak-shee-oh kwod jəs-[y]oo). *Roman law.* An action against a paterfamilias or a slave owner for enforcement of a debt contracted on behalf of the paterfamilias or slaveowner by a son or a slave.

**actio quod metus causa** (ak-shee-oh kwod mee-təs kaw-zə). *Roman law.* An action to penalize someone who wrongfully compelled the plaintiff to transfer property or to assume an obligation. ● The plaintiff could obtain damages of four times the value of the loss suffered. Pl. *actiones quod metus causa.*

**actio realis** (ak-shee-oh ree-ay-lis). [Law Latin] *Hist.* A real action. See *real action* under ACTION (4). Pl. *actiones reales.*

**actio redhibitoria** (ak-shee-oh red-i-bi-**tor**-ee-ə). *Roman & civil law.* An action for restoration to cancel a sale because of defects in the thing sold. Cf. *actio quanti minoris.* Pl. *actiones redhibitoriae.*

**actio rei persecutoria** (ak-shee-oh ree-ɪ pər-si-kyoo-**tor**-ee-ə). [Law Latin "an action for pursuing a thing"] *Roman law.* An action to recover a specific thing or monetary compensation, rather than a penalty. Cf. *actio poenalis.* Pl. *actiones rei persecutoriae* (ak-shee-oh-neez ree-ɪ pər-si-kyoo-**tor**-ee-ɪ).

**actio rerum amotarum** (ak-shee-oh **reer**-əm am-ə-**tair**-əm). *Roman law.* An action to recover items stolen by a spouse shortly before a divorce. Pl. *actiones rerum amotarum.*

**actio rescissoria** (ak-shee-oh re-si-**sor**-ee-ə). *Roman law.* An action to restore to the plaintiff property lost by prescription. ● This action was available to minors and other persons exempt from prescriptive claims against their property. Pl. *actiones rescissoriae.*

**actio serviana** (ak-shee-oh sər-vee-ay-nə). *Roman law.* An action by which a lessor could seize, in satisfaction of unpaid rent, the lessee's personal property brought onto the leased premises. Pl. *actiones servianae.*

**actio servi corrupti** (ak-shee-oh sər-vɪ kə-**rəp**-tɪ). [Latin] *Roman law.* An action for corrupting a slave or servant. ● Since the "corruption" could take the form of bribery to find out the master's confidential business information, one scholar suggested in a famous article that it could be the precursor of the modern law of trade secrets. A. Arthur Schiller, *Trade Secrets and the Roman Law: The Actio Servi Corrupti,* 30 Colum. L. Rev. 837 (1930). Other scholars strongly disagree (see quotation).

"The *actio servi corrupti* presumably or possibly could be used to protect trade secrets and other similar commercial

interests. That was not its purpose and was, at most, an incidental spin-off. But there is not the slightest evidence that the action was ever so used." Alan Watson, *Trade Secrets and Roman Law: The Myth Exploded,* 11 Tul. Eur. & Civ. L.F. 19 (1996).

**actio stricti juris** (ak-shee-oh **strik**-tɪ joor-is). *Roman law.* A class of personal actions enforceable exactly as stated in the *formula* without taking equitable considerations into account; an action of strict right. ● This type of action was often used to recover a definite sum of money or a particular object that was the subject of a formal promise (*stipulatio*). See FORMULA (1). Pl. *actiones stricti juris.*

**actio temporalis** (ak-shee-oh tem-pə-**ray**-lis). *Roman & civil law.* An action that must be brought within a specified time. Cf. *actio perpetua.* Pl. *actiones temporales.*

**actio tutelae** (ak-shee-oh t[y]oo-**tee**-lee). *Roman law.* An action arising from a breach of the duty owed by a guardian (*tutor*) to the ward, such as mismanagement of the ward's property. Pl. *actiones tutelae.*

**actio utilis** (ak-shee-oh **yoo**-ta-lis). *Roman law.* An extension of a direct action, founded on utility rather than strict right, available esp. to persons having an interest in property less than ownership. ● This type of action was modeled after the *actio directa.* Cf. *actio directa; actio in factum.* Pl. *actiones utiles.*

**actio venditi** (ak-shee-oh **ven**-də-tɪ). *Roman law.* An action by which a seller could obtain his price or enforce a contract of sale. — Also termed *actio ex vendito.* Pl. *actiones venditi.*

**actio vi bonorum raptorum** (ak-shee-oh vɪ bə-**nor**-əm rap-**tor**-əm). *Roman law.* A penal action to recover goods taken by force. ● A successful plaintiff would also receive three times the value of the taken property. Cf. INTERDICTUM QUOD VI AUT CLAM.

**actio vulgaris** (ak-shee-oh vəl-**gair**-is). *Hist.* An ordinary action, as opposed to one granted in special circumstances. Pl. *actiones vulgares.*

**legis actio.** See LEGIS ACTIO.

**action.** (14c) **1.** The process of doing something; conduct or behavior. **2.** A thing done; ACT (2). **3.** *Patents.* OFFICE ACTION.

   **advisory action.** *Patents.* See *advisory office action* under OFFICE ACTION.

**4.** A civil or criminal judicial proceeding. — Also termed *action at law.* [Cases: Action ⬦1.]

"An action has been defined to be an ordinary proceeding in a court of justice, by which one party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense. But in some sense this definition is equally applicable to special proceedings. More accurately, it is defined to be any judicial proceeding, which, if conducted to a determination, will result in a judgment or decree. The action is said to terminate at judgment." 1 Morris M. Estee, *Estee's Pleadings, Practice, and Forms* § 3, at 1 (Carter P. Pomeroy ed., 3d ed. 1885).

"The terms 'action' and 'suit' are nearly if not quite synonymous. But lawyers usually speak of proceedings in courts of

nost, an
evidence
n, *Trade*
al. Eur. &

*Roman*
actly as
consid-
. ● This
ite sum
subject
ι (1). Pl.

*Roman*
within a
*es tem-*

*an law.*
red by a
gement

aw. An
· rather
ring an
is type
f. *actio*

aw. An
rice or
*ctio ex*

10r-am
ecover
· would
taken
м.

st.
special

onduct
OFFICE

*action*

– Also

roceed-
secutes
a right,
ment of
equally
ely, it is
nducted
ee. The
l. Estee,
arter P.

synony-
ourts of

law as 'actions,' and of those in courts of equity as 'suits.' In olden time there was a more marked distinction, for an action was considered as terminating when judgment was rendered, the execution forming no part of it. A suit, on the other hand, included the execution. The word 'suit,' as used in the Judiciary Act of 1784 and later Federal statutes, applies to any proceeding in a court of justice in which the plaintiff pursues in such court the remedy which the law affords him." Edwin E. Bryant, *The Law of Pleading Under the Codes of Civil Procedure* 3 (2d ed. 1899).

"'Action' in the sense of a judicial proceeding includes recoupment, counterclaim, set-off, suit in equity, and any other proceedings in which rights are determined." UCC § 1-201(1).

**action at law.** A civil suit stating a legal cause of action and seeking only a legal remedy. See *suit at law* and *suit in equity* under SUIT. [Cases: Action ⬦⟞21.]

**action de die in diem** (dee **dı**-ee in **dı**-em). [Law Latin "from day to day"] *Hist.* **1.** An action occurring from day to day; a continuing right of action. **2.** An action for trespass for each day that an injury continues.

"That trespass by way of personal entry is a continuing injury, lasting as long as the personal presence of the wrongdoer, and giving rise to actions *de die in diem* so long as it lasts, is sufficiently obvious." R.F.V. Heuston, *Salmond on the Law of Torts* 42 (17th ed. 1977).

**action de in rem verso** (dee **in** rem **vər**-soh). [Latin "action for money applied to (the defendant's) advantage"] **1.** *Roman & civil law.* An action for unjust enrichment, in which the plaintiff must show that an enrichment was bestowed, that the enrichment caused an impoverishment, that there is no justification for the enrichment and impoverishment, and that the plaintiff has no other adequate remedy at law, including no remedy under an express or implied contract. **2.** *Roman law.* An action brought against a paterfamilias or a slaveowner who benefited from the transaction of a child or slave. — Also termed (in both senses) *actio de in rem verso.*

**action en declaration de simulation.** *Louisiana law.* An action to void a contract. See *simulated contract* under CONTRACT.

**action ex contractu** (eks kən-**trak**-t[y]oo). A personal action arising out of a contract. [Cases: Action ⬦⟞ 27.]

"*Actions ex contractu* were somewhat illogically classified thus: *covenant, debt, assumpsit, detinue,* and *account.* The *action of covenant* lay where the party claimed damages for a breach of contract or promise under seal. The *writ of debt* lay for the recovery of a debt; that is, a liquidated or certain sum of money alleged to be due from defendant to plaintiff. The *writ of detinue* was the ancient remedy where the plaintiff claimed the specific recovery of goods, chattels, deeds, or writings detained from him. This remedy fell into disuse by reason of the unsatisfactory mode of trial of 'wager of law,' which the defendant could claim; and recourse was had to the action of replevin. In the American States an action of replevin founded upon statute provisions is almost universally the remedy for the recovery of specific personal property." Edwin E. Bryant, *The Law of Pleading Under the Codes of Civil Procedure* 5 (2d ed. 1899).

**action ex delicto** (eks də-**lik**-toh). A personal action arising out of a tort. [Cases: Action ⬦⟞27.]

"The actions *ex delicto* were originally the action of *trespass* and the action of *replevin.*" Edwin E. Bryant, *The Law of Pleading Under the Codes of Civil Procedure* 5 (2d ed. 1899).

**action for money had and received.** At common law, an action by which the plaintiff could recover money paid to the defendant, the money usu. being recoverable because (1) the money had been paid by mistake or under compulsion, or (2) the consideration was insufficient. [Cases: Implied and Constructive Contracts ⬦⟞10–25.]

"The *action for money had and received* lay to recover money which the plaintiff had paid to the defendant, on the ground that it had been paid under a mistake or compulsion, or for a consideration which had wholly failed. By this action the plaintiff could also recover money which the defendant had received from a third party, as when he was accountable or had attorned to the plaintiff in respect of the money, or the money formed part of the fruits of an office of the plaintiff which the defendant had usurped." Robert Goff & Gareth Jones, *The Law of Restitution* 3 (3d ed. 1986).

**action for money paid.** At common law, an action by which the plaintiff could recover money paid to a third party — not to the defendant — in circumstances in which the defendant had benefited. [Cases: Implied and Constructive Contracts ⬦⟞6.]

"The *action for money paid* was the appropriate action when the plaintiff's claim was in respect of money paid, not to the defendant, but to a third party, from which the defendant had derived a benefit. Historically, the plaintiff had to show that the payment was made at the defendant's request; but we shall see that the law was prepared to 'imply' such a request on certain occasions, in particular where the payment was made under compulsion of law or, in limited circumstances, in the course of intervention in an emergency on the defendant's behalf, which in this book we shall call necessitous intervention." Robert Goff & Gareth Jones, *The Law of Restitution* 3 (3d ed. 1986).

**action for poinding.** *Hist.* A creditor's action to obtain sequestration of the land rents and goods of the debtor to satisfy the debt or enforce a distress.

**action for the loss of services.** *Hist.* A husband's lawsuit against one who has taken away, imprisoned, or physically harmed his wife in circumstances in which (1) the act is wrongful to the wife, and (2) the husband is deprived of her society or services. [Cases: Husband and Wife ⬦⟞209(3).]

**action for the recovery of land.** See EJECTMENT.

**action in equity.** (18c) An action that seeks equitable relief, such as an injunction or specific performance, as opposed to damages. See *suit in equity* under SUIT. [Cases: Action ⬦⟞21.]

**action in personam** (in pər-**soh**-nəm). (1800) **1.** An action brought against a person rather than property. ● An *in personam* judgment is binding on the judgment–debtor and can be enforced against all the property of the judgment–debtor. **2.** An action in which the named defendant is a natural or legal person. — Also termed *personal action;* (in Roman and civil law) *actio in personam; actio personalis.* See IN PERSONAM. [Cases: Action ⬦⟞16.] Pl. *actiones in personam; actiones personales.*

**action in rem** (in **rem**). (18c) **1.** An action determining the title to property and the rights of the parties, not merely among themselves, but also against all persons at any time claiming an interest in that property; a real action. [Cases: Action ⬦16.] **2.** *Louisiana law.* An action brought for the protection of possession, ownership, or other real rights in immovable property. La. Civ. Code arts. 3651 *et seq.* **3.** *Louisiana law.* An action for the recovery of possession of immovable property. La. Civ. Code art. 526. — Also termed (in Roman law) *actio in rem; actio realis; real action.* See IN REM. Pl. **actiones in rem. 4.** An action in which the named defendant is real or personal property.

**action of account.** See ACCOUNTING (3).

**action of assize.** *Hist.* A real action by which the plaintiff proves title to land merely by showing an ancestor's possession. See ASSIZE.

**action of book debt.** See ACCOUNTING (4).

**action of debt.** See CONDITIO.

**action of declarator.** *Scots law.* An action brought in the Court of Session for the purpose of establishing a legal status or right. — Also termed *declarator; action for declaratory.*

**action of ejectment.** See EJECTMENT (3).

**action of reprobator.** See REPROBATOR.

**action on account.** See ACCOUNTING (4).

**action on expenditure.** An action for payment of the principal debt by a personal surety.

**action on the case.** See *trespass on the case* under TRESPASS.

**action per quod servitium amisit** (pər kwod sər-vish-ee-əm ə-mɪ′-sit). [Latin] *Hist.* An action for the loss of a servant's services.

**action quasi in rem** (**kway**-sɪ in **rem** *or* **kway**-zɪ). (1883) An action brought against the defendant personally, with jurisdiction based on an interest in property, the objective being to deal with the particular property or to subject the property to the discharge of the claims asserted. See *quasi in rem* under IN REM. [Cases: Action ⬦16.]

**action to quiet title.** (1837) A proceeding to establish a plaintiff's title to land by compelling the adverse claimant to establish a claim or be forever estopped from asserting it. — Also termed *quiet-title action.* [Cases: Quieting Title ⬦1.]

**action to review judgment.** *Rare.* **1.** MOTION FOR NEW TRIAL. **2.** A request for judicial review of a nonjudicial body's decision, such as an administrative ruling on a workers'-compensation claim. ● The grounds for review are usu. similar to those for a new trial, esp. patent errors of law and new evidence.

**amicable action.** See *test case* (1) under CASE.

**civil action.** (16c) An action brought to enforce, redress, or protect a private or civil right; a noncriminal litigation. — Also termed (if brought by a private person)

*private action;* (if brought by a government) *public action.* [Cases: Action ⬦1.]

"The code of New York, as originally adopted, declared, 'the distinctions between actions at law and suits in equity, and the forms of all such actions and heretofore existing, are abolished; and there shall be in this State hereafter but one form of action for the enforcement or protection of private rights and the redress of private wrongs, which shall be denominated a civil action.' With slight verbal changes the above provision has been enacted in most of the States and Territories which have adopted the reformed procedure." Edwin E. Bryant, *The Law of Pleading Under the Codes of Civil Procedure* 106 (2d ed. 1899).

**class action.** See CLASS ACTION.

**collusive action.** (18c) An action between two parties who have no actual controversy, being merely for the purpose of determining a legal question or receiving a precedent that might prove favorable in related litigation. — Also termed *fictional action.* [Cases: Action ⬦8.]

**common-law action.** An action governed by common law, rather than statutory, equitable, or civil law. [Cases: Action ⬦21.]

**criminal action.** (16c) An action instituted by the government to punish offenses against the public. [Cases: Action ⬦18.]

**cross-action.** An action brought by the defendant against the plaintiff based on the same subject matter as the plaintiff's action. See CROSS-CLAIM. [Cases: Federal Civil Procedure ⬦786; Pleading ⬦138, 148.]

**derivative action.** See DERIVATIVE ACTION.

**direct action.** See DIRECT ACTION.

**fictional action.** See *collusive action.*

**fictitious action.** An action, usu. unethical, brought solely to obtain a judicial opinion on an issue of fact or law, rather than for the disposition of a controversy. [Cases: Action ⬦8.]

**Good Samaritan action.** See GOOD SAMARITAN ACTION.

**hypothecary action** (hɪ-**poth**-ə-ker-ee). *Roman & civil law.* An action for the enforcement of a mortgage (*hypotheca*); a lawsuit to enforce a creditor's claims under a hypothec or hypothecation. — Also termed *actio hypothecaria.*

**innominate action** (i-**nom**-i-nət). An action that has no special name by which it is known. Cf. *nominate action.*

**joint action. 1.** An action brought by two or more plaintiffs. **2.** An action brought against two or more defendants. [Cases: Action ⬦50(4.1).]

**local action.** An action that can be brought only in the jurisdiction where the cause of action arose, as when the action's subject matter is a piece of real property. [Cases: Courts ⬦7.]

**matrimonial action.** An action relating to the state of marriage, such as an action for separation, annul-

) *public*

ment, or divorce. [Cases: Divorce ◇▷1; Marriage ◇▷ 57.]

**mixed action.** An action that has some characteristics of both a real action and a personal action. [Cases: Action ◇▷30.]

> "In early times the only mixed actions were those for the partition of lands, for which a writ was provided in the common-law courts. The remedy was further enlarged by the statute of 31 Hen. VII c. 1, and 32 Hen. VIII c. 32, which gave compulsory partition, by writ at common law. These statutes formed the basis of partition in the American States; but in England and here courts of Chancery have been found most convenient, and their procedure most favorable for the division of estates in land. The statutes at the present time, in most of the States, prescribe a procedure which is quite similar to that in equity practice." Edwin E. Bryant, *The Law of Pleading Under the Codes of Civil Procedure* 10–11 (2d ed. 1899).

**nominate action** (nom-i-nət). An action that is known by a name, such as a confessory action, a petitory action, or a possessory action. Cf. *innominate action.*

**nonpersonal action.** An action that proceeds within some category of territorial jurisdiction other than in personam — that is, jurisdiction in rem, quasi in rem, or over status.

**penal action.** (16c) **1.** A criminal prosecution. [Cases: Action ◇▷18.] **2.** A civil proceeding in which either the state or a common informer sues to recover a penalty from a defendant who has violated a statute. ● Although civil in nature, a penal action resembles a criminal proceeding because the result of a successful action is a monetary penalty intended, like a fine, to punish the defendant. See COMMON INFORMER. [Cases: Action ◇▷19.]

> "At one time it was a frequent practice, when it was desired to repress some type of conduct thought to be harmful, to do so by the machinery of the civil rather than of the criminal law. The means so chosen was called a penal action, as being brought for the recovery of a penalty; and it might be brought, according to the wording of the particular statute creating the penal action, either by the Attorney-General on behalf of the state, or by a common informer on his own account. A common informer was anyone who should first sue the offender for the penalty. Penal actions are still possible in a few cases, and their existence renders invalid several suggested distinctions between civil wrongs and crimes." John Salmond, *Jurisprudence* 107 (Glanville L. Williams ed., 10th ed. 1947).

> "For in 'penal actions,' unless the statute expressly authorizes private persons to act as informers, the State alone can sue and recover the penalty; and yet there is full authority for ranking such suits by it as merely civil proceedings." J.W. Cecil Turner, *Kenny's Outlines of Criminal Law* 538 (16th ed. 1952).

**3.** A civil lawsuit by an aggrieved party seeking recovery of a statutory fine or a penalty, such as punitive damages. [Cases: Action ◇▷19.]

> "[T]here exists a well-known class of proceedings called 'penal actions,' by which pecuniary penalties can be recovered — in some cases by any person who will sue for them — from the doers of various prohibited acts; these acts being thus prohibited, and visited with penalties, solely on account of their tendency to cause evil to the community at large, 'considered as a community.' For example, a person who, in advertising a reward for the

return of lost property, adds that 'no questions will be asked' incurs by the Larceny Act, 1861, a penalty of £50 recoverable by anyone who will sue for it." J.W. Cecil Turner, *Kenny's Outlines of Criminal Law* 533–34 (16th ed. 1952).

**personal action.** (17c) **1.** An action brought for the recovery of debts, personal property, or damages arising from any cause. — Also termed *remedial action.* [Cases: Action ◇▷30.]

> "Personal actions are subdivided into those brought for the recovery of a debt or of damages for the breach of a contract, or for tort, for some injury to the person or to relative rights or to personal or real property. The most common of these actions are debt, covenant, assumpsit, detinue, trespass, trespass on the case, trover, and replevin." Benjamin J. Shipman, *Handbook of Common-Law Pleading* § 34, at 65 (Henry Winthrop Ballantine ed., 3d ed. 1923).

**2.** See *action in personam.*

**petitory action** (pet-ə-tor-ee). (17c) **1.** *Roman & civil law.* An action to establish and enforce title to property independently of the right to possession. **2.** *Civil law.* An action for the recognition of ownership or other real right in immovable (or sometimes movable) property. ● In civil-law systems, the petitory action (revendication) is a much broader and more effective remedy than the *rei-vindicatio,* the Roman prototype. This action is based on, and tends to protect, real rights, that is, ownership and its dismemberments. It is therefore a real action, distinguishable from personal actions based on (and tending to protect) personal rights. Generally, the petitory action is available for the protection of the ownership of both movables and immovables. In Louisiana, however, the petitory action is for the recognition of ownership or other real right in immovable property, brought by a person who is not in possession of it. La. Code Civ. Proc. art. 3651. An action for the recognition of such a right in movable property is an innominate real action, known as a *revendicatory action.* — Also termed *petitory suit; petitorium; revendication.* [Cases: Real Actions ◇▷6.]

**plenary action** (plee-nə-ree *or* plen-). (1837) A full hearing or trial on the merits, as opposed to a summary proceeding. Cf. *summary proceeding* under PROCEEDING.

**possessory action** (pə-zes-ə-ree). (17c) **1.** An action to obtain, recover, or maintain possession of property but not title to it, such as an action to evict a non-paying tenant. — Also termed *possessorium.* [Cases: Ejectment ◇▷17; Replevin ◇▷1.]

> "The possessory action is available for the protection of the *possession* of corporeal immovables as well as for the protection of the *quasi-possession* of real rights in immovable property. It is distinguished from the *petitory* action which is available for the recognition and enforcement of ownership or of real rights in another's immovable, such as a usufruct, limited personal servitudes, and predial servitudes." A.N. Yiannopoulos, *Civil Law Property* § 333, at 653 (4th ed. 2001).

**2.** *Maritime law.* An action brought to recover possession of a ship under a claim of title. [Cases: Admiralty ◇▷8.]

**private action.** See *civil action*.

**public action.** See *civil action*.

**real action.** (16c) **1.** An action brought for the recovery of land or other real property; specif., an action to recover the possession of a freehold estate in real property, or seisin. **2.** *Civil law.* An action based on, and tending to protect, a real right, namely, the right of ownership and its dismemberments. • It is distinguishable from a personal action, which is based on (and tends to protect) a personal right. **3.** *Louisiana law.* An action brought for the protection of possession, ownership, or other real rights in immovable property. La. Code Civ. Proc. arts. 3651 *et seq.* — Also termed *action in rem; actio in rem; actio realis*. See SEISIN. [Cases: Real Actions ⊂⊃1–6.]

> "If the question be asked why it was that a large part of the really English law which Bracton undertook to expound is found in connection with the subject of real actions, while in Blackstone's treatise only the personal actions are deemed worthy of attention, the answer must be that the former were dying out. When Chitty wrote (1808) the old real actions were practically obsolete, and in the succeeding generation such vestiges of them as remained were abolished by statute." Hannis Taylor, *The Science of Jurisprudence* 574 (1908).

> "The principal real actions formerly in use were (1) the writs of right; (2) the writs of entry; (3) the possessory assizes, such as novel disseisin and mort d'ancestor. Real actions are those in which the demandant seeks to recover seisin from one called a tenant, because he holds the land. They are real actions at common law because the judgment is in rem and awards the seisin or possession." Benjamin J. Shipman, *Handbook of Common-Law Pleading* § 32, at 63 (Henry Winthrop Ballantine ed., 3d ed. 1923).

**redhibitory action.** *Civil law.* An action brought to void a sale of a thing having a defect that renders it either useless or so flawed that the buyer would not have bought it in the first place. See REDHIBITION. [Cases: Sales ⊂⊃130; Vendor and Purchaser ⊂⊃123.]

**remedial action. 1.** See REMEDIAL ACTION. **2.** See *personal action* (1).

**representative action. 1.** See CLASS ACTION. **2.** See DERIVATIVE ACTION (1).

**rescissory action.** *Scots law.* An action to set aside a deed.

**revendicatory action** (ree-ven-di-kə-tor-ee). See *petitory action*.

**separate action.** (18c) **1.** An action brought alone by each of several complainants who are all involved in the same transaction but either cannot legally join the suit, or not being required to join, choose not to join it. **2.** One of several distinct actions brought by a single plaintiff against each of two or more parties who are all liable to a plaintiff with respect to the same subject matter. — Also termed *several action*.

**several action.** See *separate action*.

**sham action.** An objectively baseless lawsuit the primary purpose of which is to hinder or interfere with a competitor's business relationships. *See Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 113 S.Ct. 1920 (1993). — Also termed *sham lawsuit; sham suit*. See SHAM EXCEPTION. [Cases: Antitrust and Trade Regulation ⊂⊃ 905(3).]

**statutory action.** An action governed by statutory law rather than equitable, civil, or common law. [Cases: Action ⊂⊃3.]

**test action.** See *test case* (2) under CASE.

**third-party action.** (1872) An action brought as part of a lawsuit already pending but distinct from the main claim, whereby a defendant sues an entity not sued by the plaintiff when that entity may be liable to the defendant for all or part of the plaintiff's claim. • A common example is an action for indemnity or contribution. [Cases: Federal Civil Procedure ⊂⊃281; Parties ⊂⊃50.]

**transitory action.** An action that can be brought in any venue where the defendant can be personally served with process. [Cases: Venue ⊂⊃4.]

> "Transitory actions are universally founded on the supposed violation of rights which, in contemplation of law, have no locality. They are personal actions, that is, they are brought for the enforcement of purely personal rights or obligations. If the transaction on which the action is founded could have taken place anywhere, the action is generally regarded as transitory; but if the transaction could only have happened in a particular place . . . the action is local. Some authorities, considering the effect of the distinction, define transitory actions as actions which may be tried wherever defendant may be found and served." 92 C.J.S. *Venue* § 8, at 678–79 (1955).

**Action.** A former independent federal agency that administered various volunteer-services programs including Foster Grandparents, Retired Senior Volunteers, Senior Companions, Volunteers in Service to America, and Student Community Service Projects. • Its functions were transferred to the Corporation for National and Community Service in 1995. See CORPORATION FOR NATIONAL AND COMMUNITY SERVICE.

**action, cause of.** See CAUSE OF ACTION.

**action, form of.** See FORM OF ACTION.

**action, right of.** See RIGHT OF ACTION.

**actionable,** *adj.* (16c) Furnishing the legal ground for a lawsuit or other legal action <intentional interference with contractual relations is an actionable tort>.

**actionable per quod** (pər **kwod**). (Of potentially defamatory words) not inherently defamatory and therefore requiring allegation and proof of special damages. • For example, if the defendant says, "The plaintiff is crazy," the utterance is actionable per quod. That is, the plaintiff must prove, in addition to the utterance, that the defendant intended the words to mean that the plaintiff was mentally impaired or deficient in business or professional capacity, and that these words caused the plaintiff to suffer special damages. See PER QUOD. [Cases: Libel and Slander ⊂⊃6(1), 33.]

**actionable per se** (pər **say**). (Of defamatory words) legally and conclusively presumed defamatory. • In the law of defamation, words actionable per se

are inherently libelous or slanderous. For example, if a person says of a fiduciary, "That person embezzles client funds," the utterance is actionable per se. The plaintiff does not have to allege or prove special damages. See PER SE. [Cases: Libel and Slander ⟐ 6(1), 33.]

"The terminology 'actionable per se' has proven treacherous, in that it has invited confusion with another doctrine which obtains in defamation cases. This is the doctrine which distinguishes between words (such as, 'You are a thief') which convey a defamatory meaning on their face, and, on the other hand, words of veiled detraction whose offense is apparent only when the context and circumstances are revealed. The former are sometimes said to be defamatory 'per se' or slanderous 'per se' or libelous 'per se,' whereas the latter, to be properly pleaded, must have an accompanying 'innuendo' or explanation. Clearly this requirement has no relationship to the other rule, that certain slanders are and others are not actionable without a showing of special damage, but the use of the phrase 'per se' in both connections has produced confusion, and we find many American courts adopting the practice of requiring, in cases where the defamation, whether slander or libel, must be explained by an 'innuendo' to reveal its defamatory meaning, that special damages be also pleaded." Charles T. McCormick, *Handbook on the Law of Damages* § 113, at 417 (1935).

**actionable negligence.** See NEGLIGENCE (1).

**actionable nuisance.** See NUISANCE (3).

**actionable per quod.** See ACTIONABLE.

**actionable per se.** See ACTIONABLE.

**actionable word.** A term that is defamatory in itself. See *libel per se* under LIBEL. [Cases: Libel and Slander ⟐ 6–14.]

**action agenda.** See *action calendar* under CALENDAR (4).

*actionare* (ak-shee-ə-nair-ee), *vb.* [Law Latin] To bring an action; to sue.

**action at law.** See ACTION (4).

**action calendar.** See CALENDAR (4).

**action de die in diem.** See ACTION (4).

**action de in rem verso.** See ACTION (4).

*actio negativa.* See *actio negatoria* under ACTIO.

*actio negatoria.* See ACTIO.

*actio negotiorum gestorum.* See ACTIO.

*actionem non habere debet.* See ACTIO NON.

**action en declaration de simulation.** See ACTION (4).

*action en desaveu.* *Louisiana law.* A lawsuit to disavow paternity brought by a man who is legally presumed to be the father of the child.

*actiones honorariae* (ak-shee-oh-neez [h]on-ə-rair-ee-ɪ). A praetorian action; a class of equitable actions introduced by the praetors to prevent injustices.

*actiones legis.* See LEGIS ACTIO.

*actiones nominatae* (ak-shee-oh-neez nom-ə-nay-tee), *n. pl.* [Latin "named actions"] *Hist.* Actions for which the Chancery had well-established forms. See CASUS CONSIMILI.

*actiones poenales* (ak-shee-oh-neez pee-nay-leez), *n. pl.* [Latin "penal actions"] See *actio poenalis* under ACTIO.

**action ex contractu.** See ACTION (4).

**action ex delicto.** See ACTION (4).

**action for declarator.** See DECLARATOR.

**action for declaratory.** See *action of declarator* under ACTION (4).

**action for money had and received.** See ACTION (4).

**action for money paid.** See ACTION (4).

**action for poinding.** See ACTION (4).

**action for the loss of services.** See ACTION (4).

**action for the recovery of land.** See EJECTMENT.

**action in equity. 1.** See ACTION (4). **2.** See *suit in equity* under SUIT.

**action in personam.** See ACTION (4).

**action in rem.** See ACTION (4).

**action of account.** See ACCOUNTING (3).

**action of assize.** See ACTION (4).

**action of book debt.** See ACCOUNTING (3).

**action of debt.** See CONDICTIO.

**action of declarator.** See ACTION (4).

**action of ejectment.** See EJECTMENT (3).

**action of reprobator.** See REPROBATOR.

*actio non* (ak-shee-oh non). [Latin "an action not"] *Hist.* A declaration in a special plea denying the plaintiff's right to maintain the action. ● The full phrase was *actionem non habere debet* (ought not to have or maintain the action). See *special plea* under PLEA.

**action on account.** See ACCOUNTING (4).

*actio non accrevit infra sex annos.* See ACTIO.

**action on decision.** A legal memorandum from attorneys in the Internal Revenue Service's litigation division to the Service's Chief Counsel, containing advice on whether the Service should acquiesce, appeal, or take some other action regarding a court's decision that is unfavorable to the Service. — Abbr. AOD.

**action on expenditure.** See ACTION (4).

**action on the case.** See *trespass on the case* under TRESPASS.

*actio non ulterius.* See ACTIO.

*actio noxalis* (ak-shee-oh nok-say-lis), *n.* See NOXAL ACTION.

**action per quod servitium amisit.** See ACTION (4).

**action quasi in rem.** See ACTION (4).

**action to quiet title.** See ACTION (4).

**action to review judgment.** See ACTION (4).

*actio Pauliana.* See ACTIO.

*actio perpetua.* See ACTIO.

*actio personalis.* See ACTIO.